UNITED STATES

v.

**Private E–2 William H. MITCHELL, 449–06–1040, U.S. Army, Company C, 2d Battalion, 39th Infantry, 9th Infantry Division, Fort Lewis, Washington 98433.**

SPCM 12181.

U. S. Army Court of Military Review.

29 March 1977.

Appellate Counsel for the Accused: CPT Jay Sacks Cohen, JAGC; CPT Buren R. Shelds, III, JAGC; LTC John R. Thornock, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Gay M. Holmes, JAGC; CPT William C. Kirk, JAGC; MAJ John T. Sherwood, Jr., JAGC; COL Thomas H. Davis, JAGC.

Before JONES, FULTON and FELDER, Appellate Military Judges.

## OPINION OF THE COURT

JONES, Senior Judge:

The appellant was convicted of possession of 340 grams of marihuana with intent to distribute and missing movement through neglect in violation of Articles 134 and 87, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 887. He pleaded guilty to missing movement and not guilty to the marihuana offense. We are reviewing the case pursuant to Article 66, UCMJ.

I

The principal question in this case involves the legality of the barracks search in which the marihuana was discovered. The search arose as a result of the relatively large amount of marihuana found during a routine health and welfare inspection. The legality of this latter inspection is not questioned as it was concerned with the preparedness of the unit for its impending move to Alaska.

The company commander, noting that the marihuana problem was concentrated in the mortar platoon, decided to reinspect that platoon. When he announced that decision to the 1st sergeant, another sergeant related that three soldiers whom he declined to identify had told him that 1–2 pounds of marihuana had been missed in the initial inspection. The commander arranged for the use of a marihuana dog and the mortar platoon was reinspected a short while later. The dog found the marihuana in appellant's duffel bag.

■ The appellant maintains that the reinspection was a "shakedown" of the type that was condemned by the United States Court of Military Appeals in *United States v. Roberts*, 25 U.S.C.M.A. 39, 54 C.M.R. 39, 2 M.J. 31 (1976). We agree that the reinspection was in fact a search, but that does not automatically make it an unlawful one. Only unreasonable searches and sei-

zures are condemned by the Fourth Amendment.

The search in this case was a generalized search of a specific area and of a particular group of soldiers. Such searches have been viewed with approval by the United States Court of Military Appeals when based upon probable cause. See *United States v. Drew*, 15 U.S.C.M.A. 449, 35 C.M.R. 421 (1965); *United States v. Harman*, 12 U.S.C.M.A. 180, 30 C.M.R. 180 (1961); *United States v. Gebhart*, 10 U.S.C.M.A. 606, 28 C.M.R. 172 (1959). Judge Perry in his lead opinion in *United States v. Roberts, supra*, stated, however, that he found no constitutional basis for a "fishing expedition", his description of the shakedown search. We agree with him that no such provision exists in the constitution. What does exist, as we stated above, is a prohibition only against unreasonable searches. Thus, if this search was reasonable, the marihuana was properly admitted into evidence.

■ In our opinion the search was a reasonable one based on probable cause. A large amount of marihuana was found in one particular platoon of a unit just a few days prior to the time the unit was to deploy to Alaska. This drug problem was unusual and unexpected and the company commander was quite apprehensive about the unit's ability to perform its mission on this country's outer defensive perimeter.[1] For that reason he took positive action to insure insofar as possible the readiness of his company. Anything less on his part would have been dereliction of duty—an offense under the Code.

Judge Perry stated it very well in *Roberts* when he said:

"ridding a unit of debilitating contraband drugs is a legitimate motive going to the fitness of that unit to perform its military mission. . . ." 25 U.S.C.M.A. at 47, 54 C.M.R. at 47, n. 15, 2 M.J. at 35, n. 15.[2]

---

1. The record is unclear whether the unit was to participate only in field exercises and training, or to become a part of the defense force in that command, or to be a combination of those two alternatives. In any event, the importance to national security is evident.

2. *See Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), and *Com-*

He followed by stating that, "it must be recognized that the same exercise exposes soldiers to criminal prosecution", but such is the case with any reasonable search. The company commander here took every precaution to minimize the intrusion on his men. He confined the search to the smallest area and least number of persons possible, consistent with the military need; he conducted it at a reasonable time in the afternoon rather than in a predawn swoop; he had the individuals present where they could be sure their property was protected to the maximum extent possible; and the search itself was orderly. Thus, the commander made every effort to balance the competing, sometimes conflicting, interests of military readiness versus individual protection.

■ In that balancing process the individual rights of this appellant were measured in the military context against legitimate military needs. That the appellant had some expectation of privacy in his military quarters is not questioned, but neither is it questioned that that right was somewhat less than it would have been in his civilian home. *United States v. Roberts, supra.* The Supreme Court of the United States and the Courts of Appeal have emphasized the distinction between the rights and protections of the military society and those of the civilian society in varying language:

> "This Court has long recognized that the military is by necessity, a specialized society separate from civilian society. We have also recognized that military law has, again by necessity, developed laws and traditions of its own during its long history." *Parker v. Levy,* 417 U.S. 733, 743, 94 S.Ct. 2547, 2555, 41 L.Ed.2d 439 (1974).

> "The rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty." *Burns v. Wilson,* 346 U.S. 137, 140, 73 S.Ct. 1045, 1048, 97 L.Ed. 1508 (1953).

*mittee for GI Rights v. Callaway,* 171 U.S.App. D.C. 473, 518 F.2d 466 (1975), for discussions

> "The 'expectation of privacy' . . . is different in the military than it is in civilian life." *Committee for GI Rights v. Callaway,* 171 U.S.App.D.C. 473, 518 F.2d 466 (1975).

When appellant's expectation of privacy in his barracks room was measured against the need of the military to have the tactical units on the defensive outposts in Alaska at the peak of readiness, the individual right had to yield to the extent of permitting a reasonable intrusion into his room and personal property.

Chief Judge Fletcher addressed a similar problem of balancing individual rights against military interests in *United States v. Thomas,* 24 U.S.C.M.A. 228, 51 C.M.R. 607, 1 M.J. 397 (1976). He proposed to resolve the conflict between the competing interests by permitting the commander to conduct "reasonable" inspections "in order to permit the military society to perform and accomplish its primary mission 'to fight or be ready to fight wars should the occasion arise.'"; but he would then deny to the commander the use of the fruits of such inspections as evidence in later judicial proceedings. 24 U.S.C.M.A. at 235, 51 C.M.R. at 614, 1 M.J. at 404. Chief Judge Fletcher's proposal in effect applies two different standards to the two aspects of the problem. First, he determines the question of reasonableness by considering the commander's functions in the special military society. Then, he applies a civilian society rule to the same set of facts to say that individual rights are violated so the fruits of the search must be excluded.

■ The difficulty with Chief Judge Fletcher's approach comes from finding a search reasonable when determining whether it may be conducted, but unreasonable when determining whether the fruits are later admissible. In an analogous situation the Court of Appeals for the District of Columbia circuit stated:

> "To permit an intrusive search without probable cause for purposes of a drug rehabilitation program but deny the use

of the military drug problem and the need for commanders to take corrective action.

of the results of the search for purposes of discipline presents both practical and legal problems. If the inspections are legal, any evidence of crime obtained therefrom may be used in subsequent criminal action." (citations omitted). *Committee for GI Rights v. Callaway,* 171 U.S.App.D.C. 473, 518 F.2d 466, 475 (1976).

Similarly, we believe that if a search is reasonable in the military context, then the attributes flowing from a reasonable search attach. One of those attributes is that evidence obtained therefrom is admissible in subsequent judicial proceedings.

Accordingly, we hold that the military judge was correct in admitting the 340 grams of marihuana into evidence.

## II

█ The second matter for discussion concerns the conviction for missing movement through neglect. Appellant maintains his plea of guilty to this offense was improvident because he was confined in the hands of naval authorities and thereby physically unable to make the movement.

At the time appellant left his duty station without authority he knew his unit was scheduled to move to Alaska on a date certain. He was required to move with the unit but he did not do so. The question then is whether his neglect was the proximate cause of missing the movement.

By going AWOL shortly before the scheduled movement and proceeding to a place more than 1200 miles away, the appellant failed to exercise the care necessary to assure he would be present for the departure. The intervening apprehension and confinement will not excuse him because he should reasonably have foreseen that he might be picked up for AWOL and jailed. *United States v. Daggett,* 34 C.M.R. 706 (N.B.R.1964); *cf. United States v. Myhre,* 9 U.S.C.M.A. 32, 25 C.M.R. 294 (1958). Ac-

cordingly, the military judge properly ruled that the plea was provident.

The findings of guilty and the sentence are affirmed.

Judge FULTON concurs.

Judge FELDER dissenting in part and concurring in part:

I applaud Senior Judge Jones for his comprehensive analysis of military and individual interests under the Fourth Amendment. However, I am constrained to agree with the Government and defense that the search in question was a general exploratory dragnet-type of operation, without probable cause, that is condemned in *United States v. Roberts,* 2 M.J. 31 (1976). Therefore, the drugs seized as the result thereof are inadmissible.

The Government contends that the rule in *Roberts* should not be applied to this case because the search was conducted before *Roberts* was decided. Assuming the holding is one of first impression (*but see United States v. Lange,* 15 U.S.C.M.A. 486, 35 C.M.R. 458 (1965)), because it is silent as to its retroactive or prospective application, in my opinion the *Roberts* rationale should apply to this case and all cases not "final and conclusive" under Article 76, Uniform Code of Military Justice, 10 U.S.C. § 876, as those terms are interpreted in *Mercer v. Dillon,* 19 U.S.C.M.A. 264, 41 C.M.R. 264 (1970), and *United States v. Enzor,* 42 C.M.R. 699 (A.C.M.R.1970) (en banc).

I agree that the appellant's plea of guilty to missing movement through neglect is provident.