UNITED STATES

v.

**Sergeant Roy J. BROUILLETTE, FR 436–68–2529 14th Supply Squadron, Keesler Technical Training Center (ATC).**

**ACM 22186.**

U. S. Air Force Court of Military Review.

28 June 1977.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Lieutenant Colonel Larry G. Stephens.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Gilbert J. Regan.

Before EARLY, FORAY and ORSER, Appellate Military Judges.

DECISION

EARLY, Senior Judge:

Tried by general court-martial, military judge alone, the accused was convicted, despite his pleas, of wrongfully possessing marijuana in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C.

§ 934. The approved sentence extends to confinement at hard labor for eight months, forfeiture of $150.00 per month for eight months and reduction to airman basic.[1]

This case has been forwarded for our review pursuant to Articles 66 and 69, Code, *supra*, by The Judge Advocate General who has directed our attention to two issues. In addition, appellate defense counsel have assigned one error.

■ In their assigned error appellate defense counsel assert:

THE FRUITS OF THE SEARCH OF THE ACCUSED'S ROOM WERE INADMISSIBLE BECAUSE OF THE ILLEGAL ENTRY BY GOVERNMENT AGENTS.

We disagree.

Pursuant to an authorization to search the accused's room issued on probable cause by the base commander,[2] two agents of the Air Force Office of Special Investigations (OSI), two security policemen and the accused's squadron commander proceeded to the accused's room in the barracks. After knocking on the door, the group waited "approximately three seconds", and, upon receiving no response, opened the door with a passkey and entered. Inside they saw the accused standing next to the sink. After advising the accused of his rights under Article 31, Code, supra, a search was made of the room, and the marijuana, which is the basis of the specification herein, was found. The marijuana was contained in 26 small plastic bags.

Appellate defense counsel contend that the search was illegal because the agents did not identify themselves nor state the purpose of their visit prior to their entry. We note at the outset that such requirement has long existed in the common law and has been codified by the Federal Government for its civilian officers and by various states for similar officials. See generally *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); 18 U.S.C. § 3109. The purposes of such requirements are, on the one hand, to protect the sanctity of an individual's home, and, on the other, to safeguard an officer who upon an unannounced intrusion into a home, might be mistaken for someone who had no right to be there. *Sabbath v. United States,* supra, at 589, 88 S.Ct. 1755. However, although "military quarters have some aspects of a dwelling or a home and in those respects the military member may reasonably expect privacy protected by the Fourth Amendment," *United States v. Roberts*, 2 M.J. 31, 36 (1976), "time and circumstance may require a balance to be struck at one point in the civilian community, but at another in the military." *United States v. Kazmier-czak*, 16 U.S.C.M.A. 594, 37 C.M.R. 214 (1967). Barracks rooms have never been accorded the sanctity of a civilian's private home. Various intrusions, not precisely equatable to civilian models, have long been accepted as part of the peculiarities of military life. See *United States v. Roberts*, 50 C.M.R. 699 (A.F.C.M.R.1975) reversed, 2 M.J. 31 (1976), and cases cited therein; *United States v. Thomas*, 1 M.J. 397 (1976), concurring opinion of Chief Judge Fletcher; *United States v. Drew*, 15 U.S.C.M.A. 449, 35 C.M.R. 421 (1965); *United States v. Gebhart*, 10 U.S.C.M.A. 606, 28 C.M.R. 172 (1959). Thus, the expectation of privacy of a military man does not reach the limits of his civilian counterparts.

Likewise the second reason for such a requirement does not exist in the military situation for there is little likelihood that a barracks occupant would forcibly resist the entry of security police officers or other officials.

---

1. The Commander, Lowry Technical Training Center, Lowry Air Force Base, Colorado, remitted the unexecuted portion of the sentence to confinement at hard labor and forfeiture of $150.00 per month effective 10 May 1977.

2. During oral argument, appellate defense counsel conceded the existence of probable cause for the search authorization.

Because of these and other manifest dissimilarities between the military and civilian milieus, we see no reason to extend the statute to situations beyond its purview. See *United States v. Wallis*, 44 C.M.R. 586 (A.F.C.M.R.1971), pet. denied, 44 C.M.R. 940 (1971).

Looking to the instant case, we note that the officers did knock and wait, albeit, but briefly, before using the passkey to enter. The fact that the time elapsed between knocking and entering—"approximately three seconds"—was brief is not dispositive.[3] A barracks room is not like a home; it is but a single, small room, not a collection of many rooms. It is not unreasonable to expect that a person inside a barracks room would hear and answer a knock in a considerably shorter period than would a person in a private home who quite conceivably might be out of hearing of the knock or perhaps a considerable distance from the door. Thus, the officers might reasonably believe that the room was empty and that no further announcement was necessary. Bolstering this belief is the fact that the time was near the lunch hour, and the accused could be expected to be out. Under such circumstances, even if some form of announcement was required, the procedure followed here would not offend constitutional standards.[4] "It goes without saying that in determining the lawfulness of entry . . . we may concern ourselves only with what the officers had reason to believe *at the time of their entry.*" *Ker v. California, supra,* 374 U.S. at 41, n. 12, 83 S.Ct. at 1633.

We therefore hold that the entry of the accused's room pursuant to a valid search authorization was legal.

■ The Judge Advocate General has requested that we consider two issues:

WAS THE MILITARY JUDGE CORRECT IN PROCEEDING TO TRIAL WITHOUT A NEW PRETRIAL ADVICE?

We hold that he was.

The operative facts show that the accused was originally charged with wrongful possession of marijuana "for the purpose of transfer." At the Article 39(a), Code, supra, hearing, defense counsel contended that the addition of these words to the model specification created a new offense not recognized by the Code. See Manual for Courts-Martial, 1969 (Rev.), appendix 6, no. 144. The military judge responded:

> Well, I am not one to plow ground at this stage of my judicial experience. . . . I am going to direct the government to take whatever steps are necessary to amend the specification so that it conforms to the Code, to wit; delete the last five words.

Defense counsel then moved for a new pretrial advice on the grounds that the staff judge advocate had failed to bring to the attention of the convening authority the fact that the specification, as originally drafted, did not state a proper offense,[5] and

3. Although we decide this case on other grounds, it does present an appealing case for application of the doctrine of waiver. See *United States v. Hendrix*, 21 U.S.C.M.A. 412, 45 C.M.R. 186 (1972). No objection was made at trial on this issue. The sole evidence supporting appellate defense counsel's argument is the statement by an OSI agent that "approximately three seconds after he had knocked [the squadron commander] opened up the door." Had this issue been raised at trial, evidence might have been developed as to the *actual time* that lapsed between knocking and entry and as to the reasons the officers felt that no further wait was necessary. See *United States v. Dupree*, 1 U.S.C.M.A. 665, 5 C.M.R. 93 (1952). For example, the Article 32 testimony of both the agent and the squadron commander implies that the fact that there was no response to the knock

led to the opening of the door with the passkey. Additionally, the fact that the drug involved was susceptible of being easily disposed of might have had a bearing on their actions.

4. "[T]here is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 357, 51 S.Ct. 153, 75 L.Ed. 374 (1931).

5. We do not agree that the deleted words rendered the specification defective. It is permissible to recite matters of aggravation in a specification. See Manual, supra, paragraph 28a(3). There is no doubt that the words do state an offense which is palpably and directly prejudicial to good order and discipline. *United States*

that had he known of the possibility that the above words might be deleted, he might not have referred the case to a general court-martial. The military judge directed the Government "to return the pretrial advice to the convening authority for reconsideration." On the following day, the convening authority, by letter to the trial counsel, stated that he had originally considered the offense of simple possession of marijuana as a part of the charge when he referred it to trial by general court-martial, and directed the trial to proceed.

Clearly, that letter did not constitute a new pretrial advice within the definition of the Manual. See Manual, *supra*, paragraph 35c; see also *United States v. Heaney*, 9 U.S.C.M.A. 6, 25 C.M.R. 268 (1958). However, under the circumstances of this case no additional pretrial advice was necessary. The amendment neither changed the maximum permissible punishment nor the offense alleged. Further, this very matter had already been discussed in the pretrial advice. The Article 32, Code, *supra*, investigating officer, in his excellent report, recommended the deletion of the aforementioned words on the grounds that they were mere surplusage which might be stricken at trial and added an additional element which would have to be proven. In rejecting this recommendation, the author of the pretrial advice wrote:

> [I]f upon the trial counsel's supplementary investigation it appears that he cannot marshall sufficient evidence to prove the element of purpose, he should be authorized to delete the allegation from the specification.

Thus, the convening authority was adequately apprised of the possibility that the words of purpose might be deleted prior to trial at the time that he referred the case to a general court-martial. He stated in his letter that the seriousness of the offense merited that level of court—as he had been earlier advised by the pretrial advice. We see no valid purpose which might have been served by having the convening authority again consider this issue.

We also note that the military judge was satisfied by the letter. As we view it—in spite of the imprecise use of the words, "new pretrial advice," by the trial participants—what was requested by the military judge was simply reassurance that the convening authority considered the possibility of deletion of the words of purpose when he selected the level of court-martial to try the case. See *United States v. Foti*, 12 U.S.C.M.A. 303, 30 C.M.R. 303 (1961). In no way can this interchange be considered a disagreement with the ruling of the military judge. See Manual, supra, at paragraph 67f.

Accordingly, we hold that no new pretrial advice was necessary, and the military judge was correct in proceeding with the trial.

■ The second specified issue is:
WAS THE AUTHOR OF THE POST-TRIAL REVIEW DISQUALIFIED?
We hold that she was not.

In *United States v. Engle*, 1 M.J. 387 (1976), the Court established the rule that, although preparation of the pretrial advice does not disqualify the staff judge advocate from participating in the post-trial review, the staff judge advocate should recuse himself where he must deal, in the post-trial review, with a challenge to the factual sufficiency of his own pretrial advice. Cf. Memorandum on motion to recuse, *Laird v. Tatum*, 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972). Here, no issue of factual insufficiency was presented. The sum of defense counsel's argument was that the convening authority was not properly advised as to the effect of deleting the complained-of language, and that he was not properly advised as to the effect of such deletion when he selected the level of court-martial to try the case. As shown above, this is simply

*v. Sadinsky*, 14 U.S.C.M.A. 563, 34 C.M.R. 343 (1964). The mere fact that the specification contained language in addition to that in the model specification does not adversely effect its allegation of a criminal act. See generally *United States v. Snyder*, 1 U.S.C.M.A. 423, 4 C.M.R. 15 (1972); *United States v. Sadinsky*, supra.

not so. The action of the military judge taken to reassure himself of the intentions of the convening authority does not raise defense counsel's motion to the level of substance.

We are not inclined to extend the *Engle* rule to the facts here. *Engle* does not stand for the proposition that any courtroom challenge to the adequacy of the pretrial advice automatically disqualifies the staff judge advocate from reviewing the case. To so construe the *Engle* holding "would do no more than erect a thoroughly artificial barrier in the path of speedy appellate disposition of cases" and "would correspondingly contribute nothing of substance to the ultimate objective of the [review] process—the assurance of a fair and orderly review of trial proceedings." *United States v. Collins*, 3 M.J. 518, 522 (A.F.C. M.R.1977).

The findings of guilty and the sentence are

AFFIRMED.

FORAY, Judge, concurs.

ORSER, Judge, did not participate.