**Jon E. DONNELLY, Plaintiff,**

v.

**UNITED STATES of America and its Agency the United States Navy, and CMDR Melville H. Lyman, Commanding Officer, U.S.S. Casimir Pulaski, Defendants.**

**Civ. A. No. 81–50–NN.**

United States District Court,
E. D. Virginia,
Newport News Division.

Nov. 17, 1981.

James E. Bradberry, Newport News, Va., for plaintiff.

James A. Metcalfe, Asst. U. S. Atty., Norfolk, Va., for defendants.

## OPINION AND ORDER

CLARKE, District Judge.

This matter comes before the Court on the defendants' Motion for Summary Judgment filed on September 28, 1981. The plaintiff, a member of the United States Navy, seeks a declaratory judgment declaring that he "may not be deprived of rank, pay or personal liberties as a result of evidence obtained during a search contrary to the Fourth Amendment to the United States Constitution, that the search conducted on February 11, 1981, of plaintiff's residence . . . violates the Fourth Amendment . . ., [and] grant such other and federal relief as may be proper." The defendants have responded with a Motion for Summary Judgment. The defendants contend that this Court lacks jurisdiction, or in the alternative, that plaintiff's punishment was constitutionally permissible. The Court heard oral argument on November 2, 1981. Both parties have submitted affidavits in support of their respective positions, and the matter is now ripe for disposition of the defendants' motion.

I.

On February 11, 1981, plaintiff was assigned to the U.S.S. CASIMIR PULASKI (SSBN 633) (hereinafter "the PULASKI"). The PULASKI is a nuclear-powered ballistic missile submarine with a normal complement of approximately 150 officers and men. Its mission is to conduct submerged patrols at sea for extended periods of time.

On July 1, 1980, the vessel entered the yard of Newport News Shipbuilding & Drydock Company (hereinafter "NNSDD") for its regular extended overhaul, nuclear refueling, and refurbishing of its weapons system. The yard stay for the overhaul is in excess of eighteen months. Throughout this period, the crew remains assigned and regular watches are stood on board the vessel which is in full commission at all times even though undergoing repairs.

Because the vessel was undergoing extensive refitting, normal berthing facilities on board the vessel became unavailable to members of the crew, and it became the responsibility of the United States Navy to furnish housing, either in kind or through payment of an allowance for quarters to members of the PULASKI crew. To provide such quarters, the Navy, through the Atlantic Division Naval Facilities Engineering Command, negotiated contracts with several apartment complex owners for the long-term leasing of local apartments.

Under this program, the Navy is the lessor of ten apartment units in the Villa Capri Apartments. The Navy Supervisor of Shipbuilding assigned certain apartments to the captain of the PULASKI. Included in the assignment was Apartment 80 at the Villa Capri Apartments. The Commanding Officer of the PULASKI in turn allocated Apartment 80 to Donnelly, plaintiff in this case, and one other crew member, as government housing in lieu of standard barracks.

The assignment of Donnelly to Apartment 80, as in the case of other crew members similarly assigned, did not require Donnelly to enter into any lease agreement. The sailor-occupant assigned to the quarters had no rent to pay or deposit to make. He

was not required to furnish any furniture, linen, bathroom supplies, or cooking and eating utensils. All such items were provided by the Government. As part of the leasing agreement, the Government is liable to the apartment owners for damages to the apartment units and furniture, with certain enumerated exceptions. Moreover, the plaintiff was not required to live in government furnished quarters but could have made arrangements for accommodations at his own cost elsewhere.

The utilization of government-leased apartments required the Commanding Officer to conduct monthly inspections of assigned apartments. Prior to assignment in government furnished housing, crew members were advised concerning the regulations to be followed in the leased housing. Crew members were also advised that inspections would be conducted by the command on a monthly basis and that inspectors would seize any drugs or other contraband which they might uncover. The apartment occupied by the plaintiff was inspected on a monthly basis after the arrival of the vessel in July 1980.

In the fall of 1981, the Commanding Officer of the PULASKI became concerned over the potential use, possession, and transfer of marijuana by members of his command. He directed Lieutenant Commander (LCDR) Cox, Executive Officer, to arrange for the services of a drug detection dog and handler to inspect areas under his control, including the government-leased apartment units at Villa Capri.

The Commanding Officer arranged for the February inspection of apartments assigned to crew members of the PULASKI to be conducted on February 11, 1981, by a team composed of LCDR Cox; J. A. Hawkins, an enlisted member of the PULASKI crew; Norfolk Naval Station Police Officer A. E. Simmons; and a police dog trained in narcotics detection. In the course of the inspection of plaintiff's apartment, the dog alerted the inspection team to the presence of marijuana in the pocket of a shirt hung up in a closet, and in a box of letters and personal items in the drawer of a night table.

Subsequently, Donnelly was awarded a Captain's Mast under Article 15, Uniform Code of Military Justice, 10 U.S.C. § 815. Plaintiff was found guilty of possession of marijuana contrary to Navy regulations. Punishment meted out by the Captain was: (1) restriction for a period of forty-five (45) days; (2) extra duties for forty-five (45) days; (3) reduction from the 4th enlisted pay grade to the 3rd enlisted pay grade; and (4) forfeiture of Two Hundred Fifty Dollars ($250) pay per month for two (2) months. The punishment awarded plaintiff has been executed and completed.

II.

The affidavits and accompanying exhibits clearly demonstrate that Apartment 80, Villa Capri Apartments, is an extension of Navy quarters furnished and over which the Navy has control to inspect fully. *See Saverio Petrello v. United States of America and its agency the United States Navy,* No. 81–34–NN (May 20, 1981). The apartment was under the complete control of the Navy even to the exclusion of the lessor. The Navy paid the rent and supplied all furniture, linen, bathroom supplies and cooking and eating utensils. The apartment occupied by plaintiff was assigned to the Commanding Officer of the PULASKI to provide housing for crew members who could not remain in living quarters aboard the submarine during its overhaul.

The affidavit submitted by the Commanding Officer of the PULASKI, Commander (CDR) Lyman, establishes that prior to entering the Newport News shipyard various lectures were given regarding the housing leased by the Navy and furnished to the members of the crew. At these lectures, it was explained to crew members that quarters furnished to them in lieu of their quarters aboard the submarine would be subject to monthly inspections and that drugs and other contraband would be seized. Monthly inspections pursuant to that notice were performed from July 1980 through January 1981. The inspection of February 11, 1981, differed from the prior

inspections only in the fact that a dog trained to detect marijuana was employed with its handler to go along with the inspection team from the PULASKI and the fact that the occupants of Apartment 80 were not present during the inspection.

The fundamental function of the Armed Forces is "to fight or be ready to fight wars." *Toth v. Quarles*, 350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955). Because of this, the United States Supreme Court has recognized that the military has, "by necessity, developed laws and traditions of its own during its long history." *Parker v. Levy*, 417 U.S. 733, 743, 94 S.Ct. 2547, 2555, 41 L.Ed.2d 439 (1974). "The traditional military inspection which looks at the overall fitness of a unit to perform its military mission is a permissible deviation from what may be tolerated in a civilian society, generally recognizing that such procedure is a reasonable intrusion which a service-person must expect in a military society." *United States v. Roberts*, 2 M.J. 31, 36 (C.M.A.1976). In the present case, the Commanding Officer of the PULASKI embarked upon a traditional health and welfare inspection which was fully available to him as a tool to ensure the fitness and readiness of his personnel and of his unit to fulfill their military mission. The activity was previously scheduled, was in conformity with the policy of regularly conducting such periodic inspections, and was reasonably related to ensuring the readiness of unit personnel.

The Court of Military Appeals has ruled that the use of dogs trained to detect marijuana may be used in inspections of barracks and quarters of military personnel. *United States v. Middleton*, (C.M.A.1981) 10 M.J. 123. The Court in *Middleton* also stated that:

> When the dog is in the company of the commander or a member of the commander's inspection party in an area which, by virtue of the inspection, has become 'public' to the inspecting party, the dog's detection of odors emanating even from an area not included within that particular inspection and, hence, pri-

vate is permissible and may serve to support probable cause sufficient to allow a physical intrusion into that area in search of the detected item. 10 M.J. at 129.

The use of a narcotic detecting dog was approved by this Court in *Petrello, supra*, a case involving facts similar to those in the present case. Although the packet of marijuana found in *Petrello* was in open view, the Court noted that "[e]ven if the packet was obscure, covered over by some clothing or other article, for appellate purposes our decision would be the same, based upon *United States v. Middleton, supra*, that adequate probable cause was presented by the behavior of the dog trained to detect marihuana." *Id.* at 8.

We therefore FIND that the discovery of the evidence in this case was uncovered in a routine and authorized inspection which the Navy reasonably made of the apartment. We further FIND that the evidence so discovered was not by virtue of any unlawful search and seizure proscribed by the Fourth Amendment of the United States Constitution. Because the Court concludes that the search was not constitutionally impermissible, the Court FINDS it unnecessary to address the jurisdictional issue.

For the reasons stated above, the Court GRANTS the defendants' Motion for Summary Judgment.