■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v TERRY NALBANDIAN, Respondent.—Order, Supreme Court, New York County (Jerome Marks, J.), entered November 18, 1991, which granted defendant's motion to suppress physical evidence and his statement, unanimously reversed, on the law, the motion denied, and the matter is remanded for further proceedings.

The events leading to defendant's indictment (which has not been dismissed) for criminal possession of a controlled substance in the fourth degree began on June 8, 1991, when Police Officer Patrick Daly and his partner, both of the Ninth Precinct, were working the midnight to 8:00 A.M. shift. While patrolling in a radio car, Officer Daly received a transmission instructing him and his partner to interview a robbery complainant at 315 Bowery, between 1st and 2nd Streets, in Manhattan. Officer Daly was not provided with the alleged victim's name, or any description.

Responding to the call, the officers arrived at the Palace Hotel, which Officer Daly described as a "public men's shelter" run by the City. They climbed a flight of stairs to a landing where a male night clerk sat behind a desk with a sign-in blotter. Locked metal gates prevented entry onto the

floor. Upon seeing the uniformed officers, the clerk immediately "buzzed" them through the gates without any discussion.

The officers briefly checked the sleeping quarters on that floor, and then went up another flight of stairs and entered a dimly lit dormitory room about 100 feet long and 20 to 35 feet wide. The room was filled with metal lockers and 50 to 100 beds, some of which were occupied by sleeping residents.

As Officer Daly stood in the doorway, he noticed defendant sitting on one of the beds, about five or ten feet away, folding a small piece of aluminum foil. Between his legs was a plastic bag containing white powder. The officer also noticed other pieces of foil, folded and unfolded, strewn about the bed, and a glassine envelope which the officer believed to contain heroin. As he approached defendant, the latter looked up and gave vent to a barnyard expletive. Defendant was arrested forthwith, and the officer recovered the drugs and paraphernalia from the bed.

Under these circumstances we hold that the hearing court erred in suppressing the evidence. It is well established that the police may lawfully enter a private place, even a private home, when they have obtained voluntary consent from an individual possessing requisite authority or control over the premises *(People v Cosme,* 48 NY2d 286). In our view the night clerk here was such an authorized person, and his consent was clearly manifested by his actions. There is no evidence that the night clerk involuntarily submitted to coercion by these uniformed officers. "Whether consent is given voluntarily or is the product of police coercion, express or implied, is a question of fact to be determined from the totality of the circumstances" *(People v Long,* 124 AD2d 1016, 1017, citing *Schneckloth v Bustamonte,* 412 US 218, 227). We conclude from our evaluation of the facts that the night clerk, who controlled access to the communal sleeping area and maintained a sign-in blotter, was authorized by the residents (including this defendant, who had paid $13 for a 2-night stay) to consent to entry into the room by guests, visitors and any others who had legitimate business there.

Nor could defendant have had any reasonable expectation of privacy, given the semi-public nature of this communal living space. It is elemental that to invoke the protection of the Fourth Amendment, a defendant must exhibit "an actual (subjective) expectation of privacy" which "society is prepared to recognize as 'reasonable.' " *(Katz v United States,* 389 US 347, 361 [Harlan, J., concurring].) In that regard, there could be no reasonable expectation of privacy in the sleeping area

occupied by defendant. The quarters here were truly communal—defendant's bed and everything on it were open to view by all of the other occupants, the management and any guests or visitors in the room. Defendant's quarters here partook more of an army barracks or a gymnasium locker room than a private hotel suite, which was the analogy erroneously drawn by Criminal Term.

In any event, even if defendant could reasonably claim some expectation of privacy in the room, he waived it in this case by exposing the drugs to the scrutiny of all the other residents therein. Indeed, it is equally fundamental that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection" *(Katz v United States,* 389 US 347, 351, *supra).* Under these well-settled principles, it is clear that defendant, who was wrapping cocaine in full view of other residents, forfeited any reasonable expectation of privacy.

Since the officers were lawfully in defendant's presence, the contraband in plain view was lawfully seized, and defendant's statement, incident to a lawful arrest, was improperly suppressed *(People v Thebner,* 168 AD2d 653, 654, *lv denied* 77 NY2d 911). Concur—Ellerin, J. P., Wallach, Ross, Kassal and Rubin, JJ.