UNITED STATES, Appellee,

v.

Barry D. McCARTHY, Private
U.S. Army, Appellant.

No. 67,883.
CMR No. 9001933.

U.S. Court of Military Appeals.

Argued April 7, 1993.
Decided Sept. 30, 1993.

For Appellant: *Captain Teresa L. Norris* (argued); *Colonel Malcolm H. Squires* and *Major Fran W. Walterhouse* (on brief); *Colonel Robert B. Kirby, Captain Michael P. Moran, Captain Timothy M. Lawlor, Captain Holly K. Desmarais.*

For Appellee: *Captain Richard O.I. Brown* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Joseph A. Russelburg, Major Donna L. Barlett* (on brief); *Major Edith M. Rob.*

### Opinion of the Court

GIERKE, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of burglary, assault consummated by a battery, and violation of a general regulation by wrongfully possessing a hand grenade simulator in his military dormitory, in violation of Articles 129, 128, and 92, Uniform Code of Military Justice, 10 USC §§ 929, 928, and 892, respectively. The approved sentence provides for a dishonorable discharge, confinement for 8 years, total forfeitures, and reduction to the lowest enlisted grade. The Court of Military Review affirmed the findings and sentence. 34 MJ 768 (1992).

We granted review of the following issue:[1]

> WHETHER THE WARRANTLESS APPREHENSION OF APPELLANT IN HIS BARRACKS ROOM WAS IN VIOLATION OF THE FOURTH AMENDMENT.

The charges against appellant arose from three reported assaults on female servicemembers who resided in military dormitories at Little Rock Air Force Base, Arkansas. All three complainants described their assailant as dark complected, approximately 6 feet tall with a tattoo on his top right forearm, and wearing blue jeans, tennis shoes, a black T-shirt with a large design, and a ski mask, and identifying himself as "Barry." A security police patrol supervisor, Air Force Master Sergeant (MSgt) Meadows, decided to walk through the dormitories in an effort to locate the assailant. On a door of a dormitory room he noticed a note signed by Barry McCarthy. MSgt Meadows interviewed the occupant of the room, who described Barry McCarthy as being 6 feet tall, with dark hair and a dark complexion. The occupant told MSgt Meadows that Barry McCarthy lived in Room 305, dormitory 714.

MSgt Meadows went to that dormitory room and knocked on the door but received no answer. He contacted the Charge of Quarters (CQ) who described Barry McCarthy as being 6 feet tall, with dark hair, a dark complexion, and with a tattoo. The CQ had a key to the room and authority to enter the room. MSgt Meadows returned to the room with the CQ and pounded on the door but again received no answer. The CQ opened the door with a key, and MSgt Meadows observed two men sleeping on bunk beds. The person on the lower bunk had dark hair, dark complexion, and a tattoo and was wearing blue jeans, tennis shoes, and a black T-shirt with a large design. That person was appellant, Barry McCarthy. MSgt Meadows was joined by Air Force Investigator Allen, who had received the same description of the alleged assailant. Investigator Allen attempted to awaken appellant by shaking him and speaking to him. As appellant rolled over, Investigator Allen observed a ski mask tucked into appellant's waistband. At that point Investigator Allen apprehended appellant and conducted a pat-down search, discovering a "ground burst simulator" in appellant's pocket. Investigator Allen seized the ski mask and simulator.

Appellant's military dormitory was governed by Little Rock Air Force Base Regulation 90–2, Housing Dormitory Standards and Policies (28 June 1988), which was attached to the record of trial as an appellate exhibit. That regulation provides, in pertinent part, that room assignments will be

---

1. We also granted review of the Appointments Clause issue which was decided adversely to appellant in *United States v. Weiss,* 36 MJ 224 (CMA 1992), *aff'd,* —— U.S. ——, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994).

made in accordance with Air Force regulations (para. 4); certain weapons are prohibited in dormitory rooms (para. 7b); cooking is limited to designed areas (para. 7c); a name plate is required to be posted at .or near the door (para. 8); shoes are required to be polished and lined up under the bed (para. 10a(13); room inspections are authorized (para. 9); overnight guests are prohibited (para. 12f); and visits by individuals under age 18 are prohibited unless they are accompanied by a parent or guardian (para. 12e).

Appellant relies on *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), which held that, absent exigent circumstances, police may not enter a person's home to make an arrest without a warrant or the person's consent. Appellant argues that MSgt Meadows and Investigator Allen violated the Fourth Amendment by entering his dormitory room to apprehend him without a warrant or his consent. The Government argues that *Payton* is not applicable to a military barracks or dormitory.

Appellant concedes that RCM 302(d)(2), Manual for Courts–Martial, United States, 1984, provides that a warrant is not required to make an apprehension except in private dwellings and that RCM 302(e)(2) specifically provides that living areas in military barracks are not private dwellings; but he argues that those rules violate the Fourth Amendment. Appellant points to Judge Perry's statement in *United States v. Roberts*, 2 MJ 31, 36 (CMA 1976), that "military quarters have some aspects of a dwelling or a home and in those respects the military member may reasonably expect privacy protected by the Fourth Amendment." Appellant relies on Judge Perry's language to argue that since the barracks is like a home, *Payton* requires a warrant for both searches and apprehensions in the barracks.

Although the defense argued lack of probable cause before the court-martial, there is no serious contest before this Court regarding probable cause to apprehend appellant or the authority of MSgt

Meadows and Investigator Allen to apprehend him. The issue before us is whether the Fourth Amendment, as interpreted by *Payton*, was violated by the warrantless apprehension of appellant in his dormitory room. We hold that it was not.

■ A warrant is not required for an apprehension in a public place. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Prior to *Payton v. New York, supra*, the Supreme Court had left unsettled the question whether a peace officer may enter a suspect's home to make an arrest without a warrant. *United States v. Watson*, 423 U.S. at 418 n. 6, 96 S.Ct. at 825 n. 6. In *Payton*, the Supreme Court held that a warrant is required to enter a suspect's home, regardless whether the purpose of entry is to search or to arrest. While *Watson* holds that an arrest and a search outside the "home" are constitutionally different, *Payton* holds that the intrusion involved in an arrest and the intrusion involved in a search are indistinguishable when either occurs in the "home."

■ *Payton* treats the differences between entering a home in order to search and entering a home in order to arrest as "merely ones of degree rather than kind." 445 U.S. at 589, 100 S.Ct. at 1381. Justice Stevens spoke for the Court as follows: "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id.* at 590, 100 S.Ct. at 1382. *Payton* and *Watson*, considered together, stand for the proposition that a warrant is not required for an arrest, unless the arrest occurs in the suspect's home.

This Court has held that *Payton* is applicable to the off-post residence of a soldier in Germany but has not yet decided "whether, or to what extent, *Payton* ... applies to rooms in a military barracks or dormitory or to various other types of on-post military housing." *United States v. Mitchell*, 12 MJ 265, 269 n. 1 (CMA 1982).

If *Payton* applies to rooms in a military barracks, then command authorization was required to apprehend appellant, absent exigent circumstances. RCM 302(d)(2).

■ The places where persons sleep and keep personal effects cover a wide spectrum of constitutional protection. At one end are those recognized as the "homes" contemplated by *Payton* (or "houses" in the language of the Fourth Amendment). *See Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (hotel room); *McDonald v. United States*, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948) (rooming house); *Serpas v. Schmidt*, 827 F.2d 23 (7th Cir.1987) (racetrack backstretchers' dormitories), *cert. denied*, 485 U.S. 904, 108 S.Ct. 1075, 99 L.Ed.2d 234 (1988). An institutional right to inspect does not necessarily remove constitutional protection. *See Piazzola v. Watkins*, 442 F.2d 284 (5th Cir.1971), and *Smyth v. Lubbers*, 398 F.Supp. 777 (W.D.Mich.1975) (Fourth Amendment protects college dormitory room notwithstanding college's right to inspect room). Some residences receive reduced protection because of their mobile nature. *See California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985) (mobile home parked in public area); *United States v. Hill*, 855 F.2d 664 (10th Cir.1988) (houseboat); *United States v. Whitehead*, 849 F.2d 849 (4th Cir.1988) (passenger-train sleeping compartment), *cert. denied*, 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988). A private but common area confers no legitimate expectation of privacy. *See United States v. Barrios-Moriera*, 872 F.2d 12 (2d Cir.) (no expectation of privacy in common hallway of apartment complex even though front door was locked), *cert. denied*, 493 U.S. 953, 110 S.Ct. 364, 107 L.Ed.2d 350 (1989). Communal living spaces confer no reasonable expectation of privacy. *See People v. Nalbandian*, 188 A.D.2d 328, 590 N.Y.S.2d 885 (1992) (no expectation of privacy for items on bed in communal sleeping area in men's shelter). Finally, a squatter living in a natural cave on federal land has no reasonable expectation of privacy. *United States v. Ruckman*, 806 F.2d 1471 (10th Cir.1986).

■ Constitutional protections sometimes take on a different application in a military context. As explained by the Supreme Court in *Parker v. Levy*, 417 U.S. 733, 758, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974):

[T]he different character of the military community and of the military mission requires a different application of those protections. The fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside of it.

■ The Supreme Court's contextual analysis of the First Amendment in *Parker v. Levy, supra*, was applied to the Fourth Amendment by the District of Columbia Circuit in *Committee for GI Rights v. Callaway*, 518 F.2d 466, 477 (1975), which observed, "The 'expectation of privacy' . . . is different in the military than it is in civilian life. . . . The soldier cannot reasonably expect the Army barracks to be a sanctuary like his civilian home." *See also People v. Nalbandian*, 188 A.D.2d at 330, 590 N.Y.S.2d at 887 ("Defendant's quarters here partook more of an Army barracks or a gymnasium locker room than a private hotel suite. . . ."). *Cf. Kauffman v. Secretary of the Air Force*, 415 F.2d 991, 997 n. 6 (D.C.Cir.1969) ("[W]hat might be an illegal search by a police officer may be a routine inspection in the services."). The Fourth Amendment requirement that a warrant be supported by oath or affirmation does not apply to searches and seizures by military authorities. *United States v. Stuckey*, 10 MJ 347, 361–63 (CMA 1981). We conclude, therefore, that the Fourth Amendment analysis of appellant's apprehension must be in the context of a military setting.

■ The underlying issue in a case involving an asserted violation of the Fourth Amendment is whether the occupant of the premises had "a legitimate [that is, a reasonable] expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S.

128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Whether a soldier's expectation of privacy is "reasonable" depends, at least in part, on whether society recognizes it as reasonable. *United States v. Britton*, 33 MJ 238, 239 (CMA 1991), citing *Smith v. Maryland*, 442 U.S. 735, 740–41, 99 S.Ct. 2577, 2580–81, 61 L.Ed.2d 220 (1979).

RCM 302(e)(2) provides: " 'Private dwelling' does not include the following, whether or not subdivided into individual units: living areas in military barracks, vessels, aircraft, vehicles, tents, bunkers, field encampments, and similar places." Apart from its significance as a rule of procedure, this rule is a reflection of the limits which military society, speaking through its Commander–in–Chief, is willing to recognize as reasonable for soldiers living in military barracks. *See Committee for GI Rights v. Callaway, supra.* Although Judge Perry's language in *Roberts*, which did not command a majority,[2] suggests that a military barracks is a "home" within the meaning of the Fourth Amendment, this Court has recognized that a military member's reasonable expectation of privacy in the barracks is limited by the need for military discipline and readiness. *See United States v. Middleton*, 10 MJ 123, 128 (CMA 1981) (no reasonable expectation of privacy from inspections). The question in this case involves the degree to which appellant's reasonable expectation of privacy is less than that of someone living in a private home.

This Court has observed, "Since 'the military is, by necessity, a specialized society separate from civilian society,' ... it is foreseeable that reasonable expectations of privacy within the military society will differ from those in the civilian society." *United States v. Middleton*, 10 MJ at 127. Likewise, in *United States v. Thatcher*, 28 MJ 20, 22 (CMA 1989), Chief Judge Everett pointed out:

[I]t is only *unreasonable* searches and seizure against which a servicemember— or a civilian—is protected by the Fourth Amendment. What is unreasonable depends substantially on the circumstances of the intrusion; and this Court has recognized that, in some instances, an intrusion that might be unreasonable in a civilian context not only is reasonable but is necessary in a military context.

The Supreme Court has recognized that what is "reasonable" under the Fourth Amendment may be affected by the need for order and discipline, even in nonmilitary situations. *See New Jersey v. T.L.O.*, 469 U.S. 325, 341–42, 105 S.Ct. 733, 742–43, 83 L.Ed.2d 720 (1985) (Warrantless search of schoolgirl's purse by school official, based on reasonable suspicion rather than probable cause, meets Fourth Amendment requirement that searches and seizures be "reasonable."). *See also Isiah B. v. State*, 500 N.W.2d 637 (Wis.1993) (students have no reasonable expectation of privacy in lockers where school retains right to conduct random locker searches and notice of the locker search policy is given to students).

In *United States v. Lewis*, 11 MJ 188 (CMA 1981), this Court addressed the right and duty of military authorities to enter a barracks room for a purpose akin to that in appellant's case, *i.e.*, to determine if the occupant is in the room. Writing for the majority, Chief Judge Everett observed:

[W]e can only conclude that in the military environment a servicemember who has the responsibility of locating another person to advise him of a military duty which he must perform is entitled to use reasonable means to locate that person....

11 MJ at 191.

■ Like the noncommissioned officer in *Lewis*, MSgt Meadows had a duty to locate the person who had assaulted three female

---

**2.** It probably also is dicta, since Judge Perry based his decision on lack of probable cause. *See United States v. Roberts*, 2 MJ 31, 36 (CMA 1976) ("We hold, therefore, that the opening of the door to the appellant's room by the first sergeant and the entry by the marijuana dog ... without probable cause to believe that the appellant was in possession of that contraband violated the appellant's right to be free from unreasonable searches and seizures.").

soldiers. MSgt Meadows was not a trespasser. He entered the room with the approval and assistance of the CQ, the commander's authorized representative during non-duty hours.

There are substantial differences between this appellant's "home" and the "home" considered by the Supreme Court in *Payton*. Appellant was assigned his room; he did not choose it. Appellant was assigned his roommate; he did not choose him. Appellant could not cook in his room, have overnight guests, or have unaccompanied underage guests. Appellant knew that he was subject to inspection to a degree not contemplated in private homes. *Cf. United States v. Baker*, 30 MJ 262, 267 n. 2 (CMA 1990) ("Prior notice is a factor relevant to the reasonableness of a search and tends to reduce the intrusion on privacy occasioned by the search."). The CQ had a key to the room and was authorized to enter the room on official business.

Of course, the physical characteristics of the barracks room are not in themselves determinative. They undoubtedly affect the occupant's subjective expectation of privacy, leaving the objective, *i.e.*, "reasonable," expectation of privacy to be otherwise determined.

The critical difference, for Fourth Amendment purposes, between appellant's dormitory room and a college dormitory or other dwelling place is the fact that appellant's is a *military* dormitory. Even in a non-military setting such as a school, the Supreme Court has recognized that the need for order and discipline may affect what is "reasonable" under the Fourth Amendment. *See New Jersey v. T.L.O*, *supra*. The need for military discipline parallels and in many respects exceeds the need for school discipline. Military authorities have a relationship with and responsibility for persons and property unlike anything in civilian life. A military commander is not only responsible for the barracks building and its contents; he is also responsible for the welfare of its occupants. Barracks occupants have no way to avoid noisy, abusive, violent, or unclean occupants. Eviction of undesirable "tenants" is not an option. What happens in a barracks affects the unit. What is tolerated in a barracks sets the level of discipline in the unit. "In the barracks, the impact that one servicemember can have on other persons living or working there demands that a commander have authority to regulate behavior in ways not ordinarily acceptable in the civilian sphere." Cooke, *United States v. Ezell: Is the Commander a Magistrate? Maybe*, The Army Lawyer 9, 19 n. 46 (Dept. of the Army Pamphlet 27–50–80 August 1979).

■ While the physical trappings of a modern barracks or military dormitory may be more comfortable and private than an open bay barracks, the need for discipline and readiness has not changed. *See United States v. Middleton, supra*. A soldier may lawfully be ordered to move from private family quarters into the barracks, for reasons related to military discipline or military readiness. *See, e.g., United States v. Button*, 31 MJ 897 (AFCMR 1990) (order to stay away from on-base family quarters held lawful), *aff'd on other grounds*, 34 MJ 139 (CMA 1992). While a civilian may retreat into the home and refuse the entreaties of the police to come out, a soldier may lawfully be ordered to come out of his or her quarters. *See United States v. Pettersen*, 17 MJ 69 (CMA 1983) (order to leave off-base residence and report for duty). In short, the threshold of a barracks/dormitory room does not provide the same sanctuary as the threshold of a private home. *See Committee for GI Rights v. Calloway, supra*.

We need not determine the outer limits of appellant's "reasonable" expectation of privacy. Suffice it to say that he could not reasonably expect to avoid apprehension in this case by retreating to his room.

■ We hold that appellant's reasonable expectation of privacy was not infringed by entering his dormitory room. Once the investigators were lawfully in the room, appellant's physical appearance and his possession of the ski mask provided probable cause for his apprehension, upon

which the admissibility of the ski mask and "ground burst simulator" depended. Accordingly, we hold that the military judge did not err in admitting the ski mask and simulator in evidence.

The decision of the United States Army Court of Military Review is affirmed.

Judges COX and CRAWFORD concur.

SULLIVAN, Chief Judge (concurring in the result):

I respectfully concur only in the result reached by the majority.[1] My decision is based on appellant's failure to raise the granted issue at the suppression hearing, *i.e.*, that a warrant is generally required for arrests made in private dwellings. *See Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

On the privacy issue, in my view, a member of the armed services sleeping in his two-person, locked dormitory room at 0400 hours on a weekend is entitled to a certain degree of privacy under the Fourth Amendment. When Master Sergeant (MSgt) Meadows, a member of the Air Force Base Security Police, entered appellant's room, MSgt Meadows was not in hot pursuit, was not faced with exigent circumstances, and had no knowledge that appellant was even in the room at that time. MSgt Meadows did have enough facts to establish probable cause to obtain an authorization to search (the military equivalent of a warrant) the room. Mil.R.Evid. 315, Manual for Courts-Martial, United States, 1984. That is precisely what MSgt Meadows should have done, but did not.

A person serving in the American military does suffer, under some circumstances, a reduced expectation of privacy under the Constitution, but this case is not one of them. As William Pitt, Earl of Chatham, stated in a speech in the House of Commons in 1763:

The poorest man may in his cottage bid defiance to all the forces of the Crown. It may be frail—its roof may shake—the

wind may blow through it—the storm may enter—the rain may enter—but the King of England cannot enter—all his forces dares not cross the threshold of the ruined tenement.[2]

J. Bartlett, *Familiar Quotations* 312 (16th ed. 1992).

WISS, Judge (concurring in the result):

### I

As the majority opinion indicates, the issue granted review by this Court questions "whether the warrantless apprehension of appellant in his barracks room was in violation of the Fourth Amendment." 38 MJ at 399. Thus, in this Court, appellant specifically challenges the authority of Master Sergeant Meadows to enter his locked, two-person barracks room in the wee hours of the morning without authorization from the commander or from a military magistrate.

In contrast, his trial objection to the evidence that was seized as a result of that entry was on the ground that "the search of Private McCarthy's room was done without probable cause, which is a violation of M.R.E. [Mil.R.Evid.] 315," Manual for Courts–Martial, United States, 1984. Thus, submitting "that Private McCarthy had a reasonable expectation of privacy in his barracks room," appellant's trial objection was to the *basis* for the entry into his room—probable cause—rather than to the *authority* for the entry.

While the latter objection, if it had been made, would have necessarily *asserted* that appellant had a reasonable expectation of privacy in his room that was unlawfully violated by Meadows' entry, the probable-cause objection logically *assumed* such an expectation and, accordingly, did not place that matter squarely in contention. I recognize that trial counsel responded, in part, that appellant's probable-cause objection should be overruled because probable cause was not needed: He urged that, in

---

**1.** I particularly join the excellent opinion of Judge Wiss concurring in the result in this case.

**2.** This quote is meant not as a comment on military construction but on military justice.

light of appellant "having a roommate" and therefore "didn't have a private room," he "didn't have an expectation of privacy in his room...." This alone, however, does not reflect that the parties and the military judge satisfactorily focused on the fundamental issue—whether there is a reasonable expectation of privacy in a barracks room.

Not focusing on this issue, the parties did not fully develop the record concerning the nature of the room, the occasion for any "privacy" to be compromised in the normal course of events (*i.e.*, to enforce the rules, to inspect, etc.), the extent of the privacy (*i.e.*, normalcy of locked rooms), and so forth. In this light, I believe that there is good reason to hold that appellant has waived any appellate complaint that the entry by Meadows was without proper authorization.

Mil.R.Evid. 103(a)(1) requires that, to maintain error based on a ruling admitting or excluding evidence, the objecting party must assert "the specific ground of objection, if the specific ground was not apparent from the context...." The ground now urged in this Court by appellant was neither specifically asserted nor apparent from the context of his trial objection. As a result, the evidence necessary to resolve his appellate complaint was not satisfactorily developed. Appellant bears the consequence. *See United States v. Stringer*, 37 MJ 120, 132 (CMA 1993) (Wiss, J., concurring in the result) (" [T]here is good reason to hold counsel's feet to the fire here and, in the absence of a particularly based objection, to invoke waiver.").

## II

Having concluded that appellant's complaint in this Court was not preserved by trial objection, I do not need to resolve the merits of the granted issue. Inasmuch as the majority does so, however, I feel constrained to offer at least brief remarks concerning misgivings that I have about the analysis followed by the majority and

about repercussions from the majority's conclusion.

Although it does not explicitly say so, the majority's decision in this case necessarily rests upon a view that there simply is *no* Fourth Amendment reasonable expectation of privacy in a two-person barracks room. Regardless of the reason for the intrusion—whether it is to search for a person (in order to apprehend that person) or for an object (contraband or fruits or evidence of a crime)—entry into a privacy-protected area requires proper authorization. *See Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). In the military, that authorization comes either from the commander or from a military judge or magistrate, and it is based upon probable cause. *See* RCM 302(e)(2), Manual, *supra*, and Mil.R.Evid. 315(d). Here, when the majority holds that McCarthy did not have a reasonable expectation of privacy in his closed and locked two-person room so as to require proper authorization to enter in order to effectuate his apprehension, it must be clearly understood what is the full extent of that holding: As a matter of law, a two-person barracks room is as publicly accessible as is a barracks hallway—intrusion into it for criminal law enforcement purposes requires neither authorization nor, therefore, probable cause. That said, a few thoughts about that holding come to mind.

## A

While the general question addressed by the majority has been expressly left open by this Court, *see United States v. Mitchell*, 12 MJ 265, 269 n. 1 (CMA 1982), the sweeping breadth of the majority's holding—which does not focus on objective indicia regarding society's intention to offer some Fourth Amendment privacy—would seem to depart from this Court's prior view of the nature of a two-person barracks room. *See, e.g., United States v. Roberts*, 2 MJ 31, 36 (CMA 1976); * *see generally*

---

* As the majority points out in the footnote to its opinion, Judge Perry wrote only for himself in

*United States v. Roberts*, 2 MJ 31 (CMA 1976). However, Chief Judge Fletcher concurred in the

*United States v. Stuckey*, 10 MJ 347 (CMA 1981) (discussing necessity for probable cause for commanders to search for criminal goods). While certainly not being the full counterpart of a civilian home (whether house, apartment, or hotel room), the Court nonetheless has acknowledged that such living quarters do create some aspects of the reasonable privacy expectations of a home.

In this connection, a majority of this Court observed just a few years ago in *United States v. Thatcher*, 28 MJ 20, 24 n. 3 (CMA 1989):

> As noted earlier, what is reasonable depends upon the circumstances of the intrusion. As we recognized in *United States v. Middleton*, 10 MJ 123, 128 n.8 (CMA 1981), "The armed services have made increasing efforts to provide privacy for service members in their dormitories and barracks." This transition from open bays to semi-private rooms evolved largely to make military life more palatable and, accordingly, more attractive to potential recruits. There is a much greater expectation of privacy in such a lifestyle than there is in large bays holding large numbers of individuals and having no walls or barriers between bunks and lockers. While there still is no reasonable expectation of privacy from all intrusions where command responsibility dictates otherwise, in other circumstances substantial expectations do arise from these living conditions.

Interestingly, in *Thatcher*, a majority of this Court concluded that, on the facts of that case, the uninvited daytime intrusion into the accused's barracks room (with his door closed) was a Fourth Amendment-governed intrusion into his privacy area for criminal law enforcement purposes, as opposed to a permissible intrusion for the reasonable purposes of conducting a command inspection. That intrusion in *Thatcher* was condemned by this Court due to lack of probable cause, just as appellant now asks this Court to condemn the intrusion here due to lack of proper authorization.

### B

The majority's holding also may appear to be at odds with the objective indicia of what is the expectation of privacy that society is willing to recognize in the military. These are two-person rooms, not open bays; the rooms have doors and locks on the doors; and their occupancy is governed by regulations that—aside from expressly recognizing room inspections, *see* Mil.R.Evid. 313—appear to be no more intrusive on privacy than those in many apartment buildings or hotels—*e.g.*, prohibit weapons, restrict cooking, require name label on the door, and restrict guests. Again, while not a precise image of a civilian home, these objective factors would seem to reflect society's willingness to extend some expectations of privacy. *See generally Smyth v. Lubbers*, 398 F.Supp. 777 (W.D.Mich.1975) (Fourth Amendment privacy protects college dormitory room notwithstanding that college has right to inspect the room).

Indeed, RCM 302(e)(2) itself suggests the questionableness of the majority's view of the lack of privacy that enshrouds a barracks room like the one here. That rule requires proper authorization, like that missing here, in order to enter a "private

---

result based on his prior opinion in *United States v. Thomas*, 1 MJ 397, 402 (CMA 1976)—2 MJ at 36; a fair reading of Chief Judge Fletcher's *Thomas* opinion suggests that, in this respect, he fully agreed with the views of Judge Perry, since Chief Judge Fletcher's opinion there was that the accused had a reasonable expectation of privacy in his enclosed area of a squad bay.

As to whether these views were "dicta," as the majority suggests, I point out simply that there would have been no need to find probable cause there if the barracks room that had been intruded into had not been privacy-protected. *See Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Moreover, if there is any doubt about it, immediately prior to the holding that the majority quotes in its footnote, Judge Perry wrote that "the 'shakedown inspection' as earlier defined in search specifically of criminal goods or evidence is not such a permissible intrusion into a person's reasonable expectation of privacy, even in the military setting." 2 MJ at 36.

dwelling" to apprehend someone. The rule defines "private dwelling" to include such places as "single family houses, duplexes, and apartments," even when such dwellings are merely "assigned" to the resident and even on a "temporary" basis. In contrast, the rule excludes from "private dwelling"—"living areas in military barracks, vessels, aircraft, vehicles, tents, bunkers, field encampments, and similar places," "whether or not subdivided into individual units." I am led to two questions: First, is a two-person, securable barracks room contemplated within "living areas in military barracks" that are "subdivided into individual units"? Second, when one considers the entirety of the two lists—those illustrating "private dwellings" and those that are not in that category—does a two-person, securable barracks room seem more like a house, duplex, or apartment; or instead, does it seem more like a vessel, aircraft, vehicle, tent, bunker, or field encampment?

### C

This leads to the final general reservation that I have about the majority opinion: Careful reading of that opinion will reveal that its conclusion that there is no reasonable expectation of privacy in a barracks room depends upon a cause/effect analogy that I believe is logically vulnerable. In essence, the opinion says that, because military society has a need for discipline and readiness that differs from civilian society, there is no reasonable expectation of privacy at all in the barracks room—so that an intrusion for criminal law enforcement purposes is of no moment.

The predicate is certainly valid; indeed, for that reason, this Court has recognized

the reasonableness of an intrusion into areas of privacy for purposes of conducting a military inspection. *See, e.g., United States v. Middleton,* 10 MJ at 128. *See generally New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). However, as the majority opinion itself recognizes, "An institutional right to inspect does not necessarily remove constitutional protection." 38 MJ at 401. Recognizing that *certain* intrusions into the living privacy of a military member may be reasonable in light of the military's unique discipline and readiness concerns does not, ineluctably, lead to the conclusion that there is *no* living privacy at all. Indeed, a majority of this Court quite clearly expressed a contrary sentiment in the passage from *Thatcher* quoted earlier.

Thus, I believe the majority has it precisely right when it says:

> [T]his Court has recognized that a military member's reasonable expectation of privacy in the barracks is limited by the need for military discipline and readiness. *See United States v. Middleton,* 10 MJ 123, 128 (CMA 1981) (no reasonable expectation of privacy from inspections). The question in this case involves the *degree to which appellant's reasonable expectation of privacy is less than* that of someone living in a private home.

38 MJ at 402. Having said that, however, the majority then seems to depart from the boundary of the question it has set for itself in reaching its answer: The majority today holds *not* that there is a *reduced* or a *different* expectation of privacy in a two-person barracks room but, rather, that there is *no* reasonable expectation of privacy at all in such a room. The repercussions of such a broad holding are enormous.