IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 11, 2001 Session

## STATE OF TENNESSEE v. DRINI  D. XHAFERI

**Appeal from the Circuit Court for Montgomery County**
**No. 39842      Robert W. Wedemeyer, Judge**

---

**No. M2000-01758-CCA-R3-CD - Filed March 7, 2002**

---

Convicted in the Montgomery County Circuit Court of the second-degree murder of his wife, Imja Xhaferi, the defendant, Drini D. Xhaferi, appeals and claims the trial court erred in not instructing the jury as to voluntary manslaughter, in not suppressing evidence seized by military authorities, and in admitting evidence of the defendant's prior assaults of the victim.  Finding no reversible error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee (at trial); Wade Bobo, Clarksville, Tennessee, and Lionel Barrett, Nashville, Tennessee (on appeal), for the Appellant, Drini D. Xhaferi.

Paul G. Summer, Attorney General & Reporter; Gill Robert Geldreich, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Arthur F. Bieber, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

In the light most favorable to the state, the evidence at trial showed that on January 26, 1998, the date of the homicide, the defendant had served approximately fourteen years in the United States Army.  He was a sergeant and was stationed with the 5th Special Forces Group at Fort Campbell.  He and his wife, the victim, resided in a house in Montgomery County.

In the months preceding the homicide, the defendant mentioned to friends that he believed that his wife was involved in an extramarital affair.  The defendant told one friend that he was concerned about the effect of his wife's behavior upon his military career and that he did not intend to allow her to obtain a portion of his retirement proceeds via a divorce decree.

In August and again in December, 1997, police officers went to the home of the defendant and the victim in response to complaints of domestic disturbances. On both occasions, they discovered the defendant outside the home, where he met the officers and admitted arguing with his wife. During the investigation of the August incident, the parties appeared to have been drinking, and the victim had a torn shirt and red marks along her torso that were visible through the tear in the shirt. In the December incident, the victim apparently was bruised on her right cheek. Both of these incidents resulted in the officers obtaining assault warrants against the defendant.

On January 25, 1998, a neighbor was walking by the defendant's and the victim's home and heard a male shouting threats to kill another person. The neighbor testified that angry shouts commonly emanated from the home and that the defendant and the victim had been known to throw things at one another.

On January 26, 1998, the defendant appeared at the Clarksville Police Department. He was upset, nearly in shock, and bleeding from his left arm. He informed the officers that his wife was dead and that he needed assistance. Officers went to the marital home and discovered the mortally-wounded victim lying on her back in the living room floor. She was bleeding from two stab wounds to the chest. A hunting knife bearing the defendant's fingerprints lay on the floor nearby. Although emergency medical personnel commenced resuscitation procedures, the victim succumbed to her injuries.

While being treated for a cut on his arm and a superficial cut on his abdomen, the defendant responded affirmatively when asked if he had been in a fight with his wife and whether a knife had been involved.

After the defendant was charged with homicide, the Army elected to discharge him without honor, and in the wake of this determination, military personnel were dispatched to inventory and remove the defendant's belongings from the 5th Special Forces Group's barracks. When they discovered some audio cassette tapes, a sheet of paper, and a notebook, an officer in charge of the inventory informed the Criminal Investigation Division (CID) of the Army. Upon CID's request, the officer surrendered the items to CID. Ultimately, the state introduced into evidence at trial one of the cassettes, which memorialized a soliloquy of the defendant describing to his daughter the problems he was experiencing with his wife.

Following the defendant's arrest and an appearance in court, he told an officer who was escorting him back to jail that "it ain't like I just went out there and killed her."

The defendant filed a pretrial motion to suppress the items seized from the barracks. Holding that the defendant had no reasonable expectation of privacy in the items located at the military barracks and that the military was proceeding according to established military rules in searching the barracks, inventorying the items, and relinquishing possible evidence in a criminal investigation to CID, the trial court denied the motion to suppress.

Following a jury trial, the defendant was acquitted of the charged offense of first-degree premeditated murder but was convicted of second-degree murder and sentenced to a term of 21 years in the Department of Correction.

## Lesser-Included Offense Instruction.

In his first issue, the defendant posits on appeal that the trial court erred in not instructing the jury as to the lesser-included offense of voluntary manslaughter. The defendant was charged in the indictment with premeditated first-degree murder. The trial court instructed the jury as to first-degree murder, second-degree murder, and reckless homicide. During the charge conference, the trial judge asked of counsel their positions on instructing the jury on voluntary manslaughter. The prosecutor opined that the evidence did not establish a basis for the jury finding provocation. *See* Tenn. Code Ann. § 39-13-211(a) (1997) (proscribing as voluntary manslaughter the "intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner"). Defense counsel declined to request an instruction on voluntary manslaughter. He stated that, although he would not object to the instruction being given, he doubted there was a basis for the instruction and indicated that he did not intend to argue to the jury that voluntary manslaughter was a viable option to the charged offense of first-degree murder. The trial judge declined to submit the voluntary-manslaughter charge.

During the course of the trial, the defendant submitted a written special request for charging the lesser-included offense of reckless homicide and criminally negligent homicide. The motion did not include a request for a charge on voluntary manslaughter.

The motion for new trial -- even as amended -- did not include a claim that the trial court had erred in declining to instruct the jury on voluntary manslaughter. Because the defendant did not include this claim in his motion for new trial, the state argues that the claim is waived.

We agree with the state that the claim is waived. To be sure, a trial court is obliged to instruct the jury on all applicable lesser-included offenses. *See* Tenn. Code Ann. § 40-18-110(a) (1997); *State v. Ely*, 48 S.W.3d 710, 726-27, (Tenn. 2001). The import of a constitutional right to the charge on lesser-included offenses, augmented by the mandate of Code section 40-18-110(a) that the charge be given even in the absence of a request by the defendant, is that a trial court properly charges on applicable lesser-included offenses even though the defendant objects to the charge. *See State v. Bolden*, 979 S.W.3d 587, 593 (Tenn. 1998).

*Bolden* does not indicate, however, that the constitutional and statutory rights cannot be waived by a defendant. Recently, this court has held that when a defendant "affirmatively acquiesce[s] in the failure to charge" a lesser-included offense, the issue is waived. *State v. Elesa D. McDaniels*, No. E2000-02790-CCA-R3-CD, slip op. at 6-7 (Tenn. Crim. App., Knoxville, Nov. 1, 2001). Moreover, the *Elesa D. McDaniels* court held that the issue is not cognizable as plain error because the "plain error doctrine is inapplicable when there is a deliberate choice to waive an

objection." *Id*., slip op. at 7. Thus, waiver was declared despite the issue being raised in the motion for retrial.

In the present case, the conclusion that the issue is waived is compelled with more force than in *Elesa D. McDaniels*. Not only did the defendant eschew the voluntary manslaughter instruction when he moved in writing for instructions on lesser-included offenses and when the trial judge asked him to state his position on a voluntary manslaughter charge, but he also declined to raise the issue in the motion for new trial. This court has held that appellate review of a trial court's failure to give a lesser-included offense instruction is waived when the defendant does not raise the issue in the motion for new trial. *State v. Treva Diane Green*, No. E1999-02204-CCA-R3-CD, slip op. at 13 (Tenn. Crim. App., Knoxville, Dec. 14, 2000), *perm. app. denied* (Tenn. 2001); *State v. Spadafina*, 952 S.W.2d 444, 451 (Tenn. Crim. App. 1996); *see* Tenn. R. App. P. 3(e). Thus, the issue is waived, and as in *Elesa D. McDaniels*, the deliberate choice not to press the issue below defeats any applicable claim to plain error relief.

### Motion to Suppress.

In the defendant's second issue, he complains that the trial court erred in denying his motion to suppress the items seized from the military barracks after the defendant was discharged from the Army. Of the items seized, the only one placed into evidence at trial was an audiocassette tape. The tape, played for the jury, contained a monologue of the defendant explaining his marital problems to his daughter.

The legality of the seizure depends upon whether the government violated the defendant's legitimate expectation of privacy. *Katz v. United States*, 389 U.S. 347, 360, 88 S. Ct. 507, 516 (1967). The inquiry involves two separate analyses: (1) whether the "individual, by his conduct, has 'exhibited an actual (subjective) expectation of privacy,'" and (2) whether the individual's "subjective expectation of privacy is 'one that society is prepared to recognize as reasonable.'" *Smith v. Maryland*, 442 U.S. 735, 741, 99 S. Ct. 2577, 2580 (1979) (quoting *Katz*, 389 U.S. at 361, 88 S. Ct. at 516, (Harlan, J., concurring)); *see also State v. Roode*, 643 S.W.2d 651, 652-53 (Tenn. 1982). The courts in this state have employed a litany of factors to facilitate the inquiry:

> (1) [whether the defendant owns the property seized]; (2) whether the defendant has a possessory interest in the thing seized; (3) whether the defendant has a possessory interest in the place searched; (4) whether he has the right to exclude others from that place; (5) whether he has exhibited a subjective expectation that the place would remain free from governmental invasion; (6) whether he took normal precautions to maintain his privacy; and (7) whether he was legitimately on the premises.

*State v. Ross*, 49 S.W.3d 833, 841 (Tenn. 2001); *see State v. Turnbill*, 640 S.W.2d 40, 46 (Tenn. Crim. App. 1982). An investigative intrusion that does not violate a reasonable expectation of

privacy is not a "search" within the import of the Fourth Amendment and "may be conducted without probable cause, reasonable suspicion or a search warrant." *Ross*, 49 S.W.3d at 839.

The tape was seized by government agents who were acting without benefit of a warrant. When the challenged evidence was seized pursuant to a search warrant, the burden rests upon the aggrieved party to prove a constitutional violation by a preponderance of the evidence. *State v. Henning*, 975 S.W.2d 290, 298 (Tenn. 1998). Conversely, if the evidence was seized without a warrant, the burden is upon the state to prove that the seizure passes constitutional muster. *Id*.

On review of a trial court's determination of a suppression issue, the appellate court must affirm "unless the evidence in the record preponderates against that finding." *Id.* at 299. Questions of credibility of witnesses are resolved by the trial court. *State v. Odom*, 928 S.W.2d 18, 33 (Tenn. 1998). The party who prevailed in the trial court enjoys on appeal the strongest legitimate view of the evidence and all reasonable, legitimate inferences that may be drawn from the evidence. *Id*. On the other hand, the application of the law to the facts found by the trial court is a question of law that this court reviews *de novo*. *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999).

In the present case, the state argues that the seizure was pursuant to an inventory of the defendant's military and personal items located in the barracks. We recognize that, in the genre of cases that includes police seizures of containers such as vehicles, an inventory search is recognized, under proper circumstances, as an exception to the warrant requirement. *See, e.g., State v. Watkins*, 827 S.W.2d 293, 295 (Tenn. 1992); *see also United States v. Law,* 17 M.J. 229, 236 (C.M.A. 1984) (inventory search per military regulations not subject to warrant requirement). We believe the Army's purpose in entering the defendant's area in the barracks justifies the seizure. It is not necessary that we reach the question whether an inventory objective afforded an exception to the warrant requirement; rather, we conclude that applicable military regulations that provided for the seizure of property deprived the defendant of a reasonable, legitimate expectation of privacy in the seized items.

At the suppression hearing, the state introduced a copy of Army Regulation 740-84, § 12-8. The regulation governs the recovery of clothing from a soldier who has been less than honorably discharged. It distinguishes between military items and "nonrecoverable" items. At the suppression hearing, a sergeant major in charge of the barracks testified that the defendant was less than honorably discharged from the Army, that he was in civilian custody, that the Army needed the defendant's space in the barracks, and that, upon order of the colonel commanding the battalion, the Army cleared out the space and separated the contents into recoverable military items and items that appeared to be non-military, personal items. There is no indication in the record that the collection of the items was a pretext for acquiring evidence of a homicide. The sergeant major testified that, had the discharged soldier not possessed the issued military property that the Army was entitled to recover, the shortage must be deducted from the soldier's paycheck.

We conclude that the Army had a basis for the collection of items from the defendant's barracks space and that, through the regulations, soldiers were or should have been aware that, upon a less than honorable discharge, their possessions would be located and collected as a means of clearing the occupied space and of settling the Army's final property account with the soldier. As such, we conclude that the defendant had no reasonable, legitimate expectation of privacy in the cassette tape. *See United States v. McCarthy*, 38 M.J. 398, 403 (C.M.A. 1993) (military barracks "does not provide the same sanctuary as the threshold of a private home"). Thus, the seizure of the tape was not the result of a search within the meaning of the Fourth Amendment. Once the Army had collected the cassette tape from the barracks, the seizure had occurred. We see no constitutional prohibition of a government entity turning over lawfully acquired property to another agency of the government, albeit a criminal investigation agency, when the property merits consideration as evidence in a criminal prosecution. Thus, we find no error in the trial court's denial of the defendant's suppression motion.

### Evidence Rule 404(b).

In the defendant's next issue, he complains that evidence of prior incidents of domestic violence between the defendant and the victim was erroneously admitted. Basing his claim on Tennessee Rule of Evidence 404(b), he argues that any probative value of such evidence as a means of establishing motive or intent was greatly outweighed by the unfair prejudice that resulted. *See* Tenn. R. Evid. 404(b)(3). The challenged evidence appears to include the state-sponsored testimony that the defendant had twice been charged with assaulting his wife, once in August, 1997, and a second time in December, 1997. The defendant also challenges the testimony of a witness that the defendant believed that the victim was conducting an extra-marital affair.

The trial court conducted Rule 404 jury-out hearings on the defendant's objections to these matters of evidence and ruled that the evidence was admissible. Because the trial court substantially followed Rule 404 in conducting the evidentiary hearings, we review the trial court's evidentiary rulings under an abuse-of-discretion standard. *State v. Jones*, 968, S.W.2d 776, 779 (Tenn. 1998)*; State v. Dubose,* 953 S.W.2d 649, 652 (Tenn. 1997).

The trial judge commented extensively on the record about his rationale for admitting the challenged evidence. He found the assaults that occurred in August and December, before the homicide in the following January, were "very relevant on the issue . . . of motive and intent" and that they were not "outweighed by the danger of unfair prejudice." The trial court also approved the use of the evidence that showed that the defendant believed that his wife was having an affair and that he was concerned that her behavior would hamper his military career. The trial judge excluded proposed testimony that the defendant had told a witness sometime prior to the homicide that the defendant had put a gun to the victim's head and nearly pulled the trigger.

Generally, character evidence is inadmissible to prove action in conformity with the character or trait on a particular occasion. Tenn. R. Evid. 404(a). However, evidence of a witness's crimes, wrongs or acts is admissible for other purposes if certain requirements are met:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and

(3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b)(1), (2), (3). A fourth prerequisite is that the trial court find by clear and convincing evidence that the defendant committed the other crime. Tenn. R. Evid. 404, Advisory Comm'n Comment; *State v. Parton*, 694 S.W.2d 299, 303 (Tenn.1985).

Tennessee courts have accepted the use of evidence of a homicide defendant's threats or prior violent acts directed toward the homicide victim as a means of allowing the state the opportunity to establish intent. *State v. Smith*, 868 S.W.2d 561, 574 (Tenn. 1993); *State v. Turnbill*, 640 S.W.2d 40, 46-47 (Tenn. Crim. App. 1982). The courts theorize that such evidence is probative of the defendant's *mens rea* at the time of the homicide because it reveals a "settled purpose" to harm the victim. *Id.* In the present case, the trial judge deliberatively balanced the state's interest in proving its case with the defendant's interest in not being unfairly prejudiced. Ultimately, relying in part on *Smith*, he decided that the probative value was not outweighed by the danger of unfair prejudice. He found that the prior acts had been proven by clear and convincing evidence.

We hold that the record supports these conclusions and evinces no abuse of discretion. We note that the record of the trial court's Rule 404 findings shows that the trial judge stated that he would give a cautionary instruction to the jury. Although the jury instructions are not included in the transcript prepared by the court reporter, we assume that a cautionary instruction was given.[1] Furthermore, we note that the jury, despite hearing the state's "motive and intent" evidence, acquitted the defendant of the charged offense of premeditated first-degree murder.

Having reviewed the defendant's appellate claims and being unpersuaded of reversible error, we affirm the conviction of second-degree murder.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[1] The defendant has not indicated otherwise.